Mark Lisey v. Lifetime Entertainment Services. Good morning. May it please the Court, I'm Todd Bank. I represent the appellant, Mark Lisey. I want to start, sure, nobody gets it right the first time. I want to start with the issue of ascertainability. Ascertainability. This is on the class action denial. That's correct. And that's our appeal, the subject of our appeal. The public policy problem in terms of Rule 23, and even beyond that, is that denying certification in a case like this where records existed but that the defendant didn't bother to keep them, turned a blind eye, didn't even want to know about them. Is your argument that ascertainability is not a prerequisite in connection with class certification under Rule 23? Well, we do preserve for further litigation that the heightened requirement is not part of Rule 23, like Mullins in the Seventh Circuit, and I believe another, Ninth Circuit as well, has disagreed with this Court's, I think there's only one or two decisions. You agree that our Court, in Brecher and other cases, has said, has held, that ascertainability is a prerequisite. Yes, and I think this case is very different than Brecher. I think Brecher, if I'm saying that right, is completely different because, first of all, the key in Brecher was that the class members couldn't know who they were. Now, someone in this case might not remember if they got one of the telephone calls at issue. Frankly, most people, I wouldn't say most, many people probably wouldn't. It's an unusual call, so many people probably would remember it. But a class member who does remember getting the call would know that he got the call. Can we just go back to the list for a second? Sure. The defendant hired a different entity on call to get the telephone numbers. Is there any evidence that the defendant actually got the list itself? No, the defendant never bothered to obtain it. Not only that, on call used yet another vendor, and neither the defendant knows, and on call didn't remember who the vendor even was. It was basically a scattershot campaign in which Lifetime states completely falsely that it was only trying to reach Time Warner cable subscribers. That might be true in the general sense that they were hoping to reach those people, but they weren't trying to reach those people. They simply told on call to call phone numbers in the Time Warner service area. So it was a complete scattershot approach. They didn't want to pay the money or maybe couldn't obtain the list of Time Warner subscribers. Again, our position, by the way, in the merits is that it doesn't matter whether a person was a subscriber or not. On call with the zip codes that Time Warner went into. All the New York City zip codes. I could have done that. Not all of New York City. It was. It was all or there might have been literally one or two that were like specialized office building zip codes and that type that weren't. I checked. They were all in there. Every zip code. But again, why would that matter? The fact that they provided the zip codes, they could have said call New York City phone numbers. That's where Time Warner provides service. Back to the point. The district court made specific findings on why it thought the methodology you proposed for ascertainability was not satisfactory. And so tell us why there's error in the district court's analysis. Well, the district court, the decision had, I think, literally one or maybe two sentences on that issue. There was no analysis. I don't know what the district court really thought exactly. Well, let's try the fact that the district court thought that the numbers that you, what you proposed to do, getting affidavits, was not going to be a reliable way of identifying this class, that class members wouldn't remember just by themselves when we were talking about so many years after the fact, and that the fact that they were within this zip code area didn't necessarily mean that they were called. So why wasn't the court's concern with what you were proposing, why was it error? Well, in — Which I think is another way of asking you how you think what you proposed would have accurately ascertained the class. Well, first of all, many people wouldn't remember. That's true. But in any kind of class action that deals with, let's say, consumer products, and a lot of the case law deals with cases like that, not everybody's going to remember if they bought Tide liquid detergent four and a half years ago that had a certain label or didn't have a certain label on it. The problem with the district court is that the district court, as far as public policy, and I'll get to the substance as well, the district court is essentially, or more literally, I should say, rewarding the defendant for its approach. So now what the district court is saying that — There was no list of the call numbers existed. There was a list. I'm sorry. There was a list. There was a list. Lifetime just never bothered to obtain it. There was a list. How did they decide who to call? There was a list. Well, I didn't understand that you proposed to work from a list. No, no, we didn't. We couldn't — Individual affidavits certifying receipt of the prerecorded call accompanied by phone numbers showing that they were subscribers to the New York City Residential Telephone. When I said that there was a list, I don't mean that we ever obtained the list. What I'm saying is that there was a list at some point in time. Lifetime didn't bother ever to keep it and now is trying to be rewarded for doing that. I'm sorry. I'm making myself clear. I'm sorry. You had the burden of showing that you demonstrated ascertainability. And you proposed to do it by soliciting affidavits and then showing that there were telephone bills showing subscription to the New York City Residential Service. No evidence of them ever having received a call in this way. And the district court said that no list of the numbers existed and no list was likely to emerge. You're saying that's error, but I don't see in the record where you had a basis for saying the list existed. Okay. Just so I'm clear, there's no dispute. I don't think there's any dispute that there was a list. That's one time. Yes. Oh, yes. We're not saying we have the list. That's part of the problem, which is Lifetime never bothered to keep the list. Lifetime never — It's not as if they destroyed their own. Well, obviously, if Lifetime is making these phone calls, Lifetime obviously could have said, we're only going to make these calls if we have the list. They didn't do that. They didn't bother to check for any kind of do not call, anything. How did you demonstrate ascertainability? You proposed to do things and the district court said they weren't good. I think the district court gave it a sentence or so. But my point is that this is a case where, yes, somebody could show I had a residential number in New York City at the relevant —  and I remember getting the phone call. Could somebody lie? Absolutely. I don't even think the district court discussed that. But the problem, again, all these consumer product cases that get certified, when someone has to say in an affidavit, I purchased this product, and people don't typically save receipts for a Snapple and small items like that, all these class actions would disappear. And now if I were a defense counsel and somebody wanted to engage in another massive illegal telephone calling campaign like Lifetime did, I would say make sure — I say stay blind. Don't obtain the records because — I hope I don't have to say this in the hypothetical — but because in Leases v. Lifetime, the defendant was rewarded very handsomely for turning a blind eye. I don't see why it should matter whether they had the records and destroyed them or simply — Do we want to reward a violator like this? Part of why we're here is that it took a substantial period of time for the lawsuit to be filed after the call. It was within the statute of limitations period. That should not be held against the plaintiff. And, again, the list we don't — as far as we know, the list was never kept at all. So if we had brought the case a week after the phone call, I have no reason to believe that we would have found the list. Thank you. Counsel? Good morning, Your Honor. Thank you. May it please the Court, I'm Steve Rumage, and I'm appearing this morning on behalf of the Defendant Lifetime Entertainment Services. And just to put this case in context, it's important to remember that Mr. Lisi has already received all of the relief he ever asked for under the TCPA. And so what he's asking the Court to do is send the case back, not for his own relief, but so that he can reopen this as a class action, which Mr. Bank values at roughly $200 million. Your cross-appeal, though, you challenge some of the basis of his recovery. I'm a little perplexed about that, given that you agreed to judgment. Right. If we do not — if for any reason, I'm not saying this will be the conclusion of the Court, but if we are not persuaded by plaintiff's ascertainability, are you still challenging Mr. Lisi's recovery of the money, the judgment? No. No, Your Honor. Okay. So we don't have to deal with all those questions of whether it was he was a called party, whether it was an advertisement, as it pertains to him. Exactly right, Your Honor. That is exactly right. That part is done. Exactly right, Your Honor. That becomes an issue only if — If the class is certain. Exactly. Well — We identify error. If, Your Honors, send the case back to the District Court, then we have to ascertain whether the District Court erred in not granting summary judgment, as we requested. That's exactly right, Your Honor. What I wanted to address in the time that I have is ascertainability in time-permitting standing. Even though I understand that's analytically antecedent to the question of ascertainability, I want to talk about that second, because Judge Hellerstein's decision on ascertainability is really what brings us here. And we all agree, and I think this got a little bit lost in Mr. Banks' presentation, that the standard of review on this ascertainability issue is abuse of discretion. So this was a discretionary decision that Judge Hellerstein was making. And, of course, one of the first threshold things you have to decide in ascertaining whether a district judge has exercised his discretion properly is, did he apply the right law? And he did, because we do have the Brescher case. Everybody acknowledges that the Brescher case in the Second Circuit says ascertainability is a requirement and that ascertainability requires, and I quote, an administratively feasible way of identifying who is in the class, identifying people without the necessity of a mini-hearing as to whether they're in the class or outside the class. Mr. Bank acknowledges that that's the law in the Second Circuit, but I do think it's important to emphasize that it is a rule that is based on common sense. It is not something that is plucked out of thin air. It's based on the proposition that class actions are complex and expensive things, and we need to, at the beginning, determine whether, at the end of the journey, there's going to be a class there. So in the context of a TCPA section, and just to follow up on Mr. Bank's argument, where the call occurs a few years before a lawsuit is filed, under what circumstances would it ever be administratively feasible to identify the class members? Well, I will tell you, Your Honors, first of all, the factual circumstances that we have here are unusual. And if you look at the case law, you find case after case after case where there are, in fact, lists. Where there are, in fact, what? Where there are, in fact, lists. So, for example, sometimes you know that the identification of the people to whom the calls are placed, because a business has placed a call to every orthopedic surgeon in the metropolitan area of New York. So you know that. So what about those cases where there are, for whatever reason, there's no list? Well, then you have to come up with a solution. And that's what's interesting about this case, in distinction to lots of the cases that you see where classes are certified, is that in those scenarios, Your Honor, what plaintiffs' counsel will often do is retain an expert who will look at what the information available might show and try to construct a program for ascertaining class membership and present that evidence to the district court so that the district court is satisfied that at the end of the journey, there will be a class that can be identified. And you can look at case after case. For example, the Eben case, which is Judge Rakoff's decision involving olive oil. There was an expert who put in a declaration explaining how they were going to ascertain who was in the class and who wasn't. There is no such evidence here, Your Honor. There was no effort made to overcome the ascertainability issue. And I think that's one of the important things for the court to understand, is the evolution of this during the course of the case, because it's not like this was a mystery to everybody at the beginning of the case. At the very first status conference, and Your Honor's right, Judge O'Leary, that this case was brought three years, 11 months, and 28 days after the call, so three days before the statute of limitations expired. And at the very first conference, it is disclosed to the district court that there is no list. And the district court, at a couple of occasions, directs the parties to focus their attention on that. The opening brief on class certification is filed. The word ascertainability doesn't appear. There's not even a discussion of how the class is going to be identified. It becomes the first point, not surprisingly, in lifetime's opposition. We can't identify the class. It is greeted in reply with a footnote saying we'll give notice through newspapers. No explanation of how the class is going to be identified. Then, after Judge Hellerstein says there's no list, I can't ascertain the class, the proposal is made, well, why don't we have records of telephone providers coupled with affidavits? And the problem with that is there was no explanation of what telephone records were going to be used, and more to the point, there was no evidence presented to the district court suggesting that telephone records were available from 2009, because remember, now we're in 2015. There was no evidence that the telephone providers had the kinds of records, whatever they might be, that plaintiff wanted to use. And what's fascinating is now, on appeal, if one looks at, I think it's page 26 of the reply brief of, pardon me, the opening brief of plaintiffs, the proposal is that people give their own telephone bills, query whether many people will have bills from 2009. If they don't, then it doesn't satisfy it. But what is the problem with having an affidavit from someone saying I was a telephone subscriber and here are my records from 2009, and I remember receiving this call? Now, this might actually be a relatively small class, given the problems of memory and of having the records, but why isn't that an ascertainable class? Your Honor, I think goes right to the heart of the exercise of the district judge's discretion when Your Honor asks that question, and here's why I say that. Because I think it might be an ascertainable class in the right circumstances, where the facts and circumstances are sufficient to persuade the district judge in the exercise of his or her discretion that the class can be identified through that method. And I think an interesting case for me is Jones v. Conagra. It's just a district court case, but it's Judge Breyer in San Francisco, and he canvasses all these cases where sometimes an affidavit self-identification is found satisfactory and sometimes it's not. And Judge Breyer says, you know what? The reason for that is that sometimes, because of the nature of the facts and circumstances before the district court, the district judge can have confidence that people are going to be able to self-identify. I don't have that confidence here. I don't certify the class. And even, interestingly, Your Honor, in your second favorite circuit, the Seventh Circuit, which of course doesn't recognize ascertainability as a separate requirement, what's interesting is you read the Mullins decision, which is the case that says we're not going to recognize ascertainability as a prerequisite, and how that decision approaches this question, what Your Honor just said, is we believe the district judge has discretion to allow class members to identify themselves, self-identify. So it's... Might this case have been different if the plaintiff had come before the court, having already made even a modest effort to get people within a certain neighborhood to identify themselves in the way he proposes so as to show the district court, you know, if you put a notice in the Heights Press in Brooklyn, you get 100 people who show up and 50 of them have their phone records. So this method is going to work, Judge. I would say that if, Your Honor, if I were to hypothesize how one might approach this as plaintiff's counsel, I probably would hypothesize hiring somebody who is an expert in class administration and notice, consult with them about the best way of coming up with evidence of this, and have them do perhaps what Your Honor said, perhaps do a survey, perhaps do something. But none of that was done here. In this case, it did not happen. It did not happen, Your Honor. There was nothing in the record that would give Judge Hellerstein any belief that this would ever, at the end of this journey, that we would ever have a class. And I think what's important to emphasize, because Mr. Bank brought this up a couple of times during his presentation in terms of public policy, this isn't going to make class actions go away. I mean, for better or for worse, I spent roughly the last 30 years of my life on class actions of one sort or another, and I've heard the death knell of class actions several times, and yet here I am today still doing them as a regular basis, because there are rare cases where you will have exactly the combination of circumstances here where there's a delay in bringing the case as a result of that, companies go out of business, even though, by the way, Mr. Leesey and Mr. Bank recorded this message at or about the time it was delivered and had that sitting there for those four years. Sometime during those four years, on-call goes out of business. They can't remember at a distance of four years who the vendor was. Clearly, this case would have been different if things had been filed earlier, and I'm not saying that it's barred by the statute of limitations or anything. I'm just saying it's a practical matter, and as a practical matter, those circumstances are relatively unique, and so this is not, from a public policy perspective, going to set any kind of incentive for a defendant in lifetime's position to do something any different from what you see in the cases, which is people with lists. It just doesn't exist here. Thank you very much. Thank you, Your Honor. Thank you. Reserve time. First of all, there's nothing unique about the fact that a case was brought late, very late in the statute of limitations period. That's not unique at all. I don't think there's any question about the fact that you're entitled to bring the case. It's whether or not it somehow affects the ability to ascertain the list. We have no way of knowing whether, had the suit been brought earlier, the list would have been produced, and there's also nothing unusual, and it will be far more usual if lifetime prevails here, that these lists are never going to exist anymore. But, of course, there are already cases, just common sense, where calls were made and a list wasn't kept. There's nothing unique about this case. Why don't you stay focused on how your method would have resulted in ascertainability? Yes. My concern that I expressed to counsel that it seems to me that it would have been relatively easy for you to have made a small sampling and shown the district court that it would work if it would indeed, and that no effort was made. So how can we say the judge abused his discretion? Because the judge did not apply Breccia correctly. What the judge—again, there's a sentence or two at most in the decision. I don't know what the judge really thought. I only know what he wrote in a sentence or literally maybe two. Okay? But I think the way I read the sentence or two here is that Judge Hellerstein interpreted Breccia to mean that the court has to— that ascertainability requires that the court has to believe that a given class member who claims to be a class member really is telling the truth. That's not what Breccia was about. In Breccia—which, by the way, in Breccia it said these are unique facts. These are very unusual facts. In Breccia where bonds were being traded and a person who had bonds, like stocks that are traded on the open market, would have no way of knowing whether he is a bondholder or a class member. Okay? He wouldn't know whether someone previously opted out. That would be almost like in this case as if to have standing or to be a class member, the prior owner of the telephone number would have had to get the call and, furthermore, the current owner of the phone number or assignee of the number would have no way of knowing who had that number before. That would make this case comparable to Breccia. It's not comparable at all. The district court did not get—the problem with the decision is we don't really know what the district court thought. We know what it concluded in a certain vague sense. I don't know what Judge Hellerstein thought. But just— We do know that he didn't think that this—your proposal, because there was not much to it, was going to be administratively feasible. Well, again, because I think— And I think that the question from Judge Ratchey is if you had provided a little bit more or from your adversary is if you had provided an expert at the front end to give some more assurance, then you might have had a better case for the feasibility of your proposal. I don't know what an expert could have done other than—and I think this is something the court could take judicial notice on, which is, one, telephone records. I'm not talking about itemized records of each call. I am sure Verizon has—would be able to easily produce, and I think the court could take this on judicial notice, records of who subscribed to residential service in August 2009. This is not 30 years ago. This is 7 years ago. The records would exist. And— Just to take judicial notice that Verizon could supply that? I think— Did I hear you correctly? Yes, because I don't think there's any question, but— What record would we rely on to take judicial notice of that? I think it would be common sense, but let's even set that aside. Common sense. I don't know how long Verizon keeps its records. But, again, I'm only talking about the records of who were the subscribers. But here's another important point. Maybe the class isn't as big as we said it—we thought it was in the beginning. What about those class members who, as would be very often the case, if not the majority of the time, who still have that number? Certainly if someone still has a number that they also had back to 2009, that would be—they could show that. You didn't come to the court and say, you know, we made an effort on one block in Queens or whatever, and we found five people who can tell you they remember the phone call and they have their records. So if we publish and solicit this, we are going to find a class judge. I mean, you came forward with no one but Mr. Lisi. Again, what we argued in the briefs, and I understand the point, but what we argued in the briefs is that it's true. I don't know what percentage of class members would remember the call, okay? But this was not a run-of-the-mill robocall for lowering your credit card rates or something like that. This was a call from a well-known celebrity TV show host. It was the only call that we allege that Lisi received. Would everybody remember it? No, but not everybody would remember whether they bought Snapple three years ago, but so be it. The case can be certified for those who do. Okay, thank you, gentlemen. We're going to take the matter under advisement.